UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

v.  Case Nos.  5:10cr39/RS/CJK
              5:12cv217RS/CJK

PASCUAL MONTOR TORRES
_____/

REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 356). The Government has filed a response (doc. 364) and Defendant has filed a reply (doc. 372). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

Case 5:10-cr-00039-RH-EMT   Document 387   Filed 10/28/14   Page 2 of 17

Page 2 of 17

## PROCEDURAL BACKGROUND[1]

Defendant was charged in a single count of an eleven count indictment with conspiracy to possess with intent to distribute more than five kilograms of cocaine and more than five hundred grams of methamphetamine (doc. 74). The investigation that led to the indictment of Defendant and six other individuals was extensive, and wiretaps of a co-defendant's phone revealed that the drug trafficking organization was moving over one hundred pounds of methamphetamine and kilogram quantities of cocaine from Mexico into the Northern District of Florida and Southern District of Alabama. Defendant and one other alleged coconspirator proceeded to trial. The evidence at trial was limited primarily to a cocaine delivery in May of 2010, to Defendant's possession of a cell phone used during intercepted conversations related to the cocaine delivery, to surveillance and the execution of a search warrant at Defendant's residence and a drug stash house. The jury found Defendant guilty of conspiring or possess with intent to distribute five kilograms or more of cocaine.[2]

The final Presentence Investigation Report ("PSR") attributed eleven kilograms of cocaine to Defendant, corresponding to a base offense level of 32 (doc. 231, PSR ¶¶ 86, 91).[3] There being no adjustments, Defendant's total offense level was also 32.

---

[1]Detailed statements of facts describing the offense conduct are set forth in the Presentence Investigation Report (doc. 231), and will be set forth herein only as necessary.

[2]The jury was not asked to consider methamphetamine.

[3]The initial PSR recommended holding Defendant accountable for 21 kilograms of cocaine and 2.592 kilograms of methamphetamine, which would have resulted in an offense level of 34 and a sentencing range of 151 to 188 months (doc. 210, PSR ¶¶ 86, 91, 122). After objection by the defense, the PSR was revised to reflect a reduced amount of cocaine and no methamphetamine was attributed to Defendant.

Case Nos.: 5:10cr39/RS/CJK; 5:12cv217/RS/CJK

Defendant's criminal history category was I, and the applicable guidelines range was 121 to 151 months imprisonment (PSR ¶¶ 104, 122)

The court sentenced Defendant at the midpoint of the guidelines range to a term of 136 months imprisonment (doc. 251).

Defendant appealed his conviction and sentence, making four assertions of error. Defendant argued that the district court erred by (1) admitting translated transcripts of wiretapped phone calls that had taken place in Spanish, (2) denying his motion for a judgement of acquittal because the proof offered at trial was insufficient to establish his identity, (3) denying his motion for a mistrial, and (4) sentencing him based upon the quantity of drugs found by the jury (doc. 330 at 4). The Eleventh Circuit affirmed (*id*. at 11).

In the present motion, Defendant separates his claims into four grounds for relief, but essentially claims that both trial and appellate counsel were constitutionally ineffective. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

<u>General Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for

transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual

Case 5:10-cr-00039-RH-EMT   Document 387   Filed 10/28/14   Page 5 of 17

Page 5 of 17

development." *Lynn*, 365 F.3d at 1232 n. 14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may

grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*,

876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  *Lynn*, 365 F.3d at 1239.

Ground One

Defendant asserts that counsel was ineffective at the pre-trial stages for failing to investigate, failing to interview witnesses, failing to adequately prepare for trial, and failing to file a motion to dismiss or suppress.  Defendant offers no factual support for these conclusory assertions, and they are, accordingly, insufficient to establish any constitutional violation.  Defendant also contends that counsel only met with Defendant five or six times before trial for a total of an hour, and that he was unable to understand the Spanish-speaking translator that counsel brought with him.  Defendant does not claim to have contemporaneously advised counsel of this problem.

To counter the vague allegations set forth by Defendant, counsel's declaration has detailed the pretrial communications he conducted with Defendant about the case.  Counsel agrees he consulted with Defendant on approximately six occasions at the Bay County Jail, but explains that he spent at least an hour each time with his client (doc. 364 at 18).  According to counsel, during this discussions, Defendant was reluctant to advise counsel of his role (or lack thereof) in the offense.  Defendant was unable to identify any witnesses who could exonerate him except for an individual who was deported to Mexico at the time of his arrest and was therefore no longer available.  Defendant maintained to counsel that he was not and never had been known as Catcheton or Chubby Cheeks, and that he had purchased the phone that was seized from him at the time of his arrest from the deported Mexican.  Defendant

offered no witnesses to the phone purchase. Despite thorough questioning, Defendant offered no other explanation about his role in the case or potential witnesses who could support his version of events. Therefore, the theory of defense–based upon what Mr. Torres told his lawyer– was that Defendant was in innocent possession of the cell phone bearing the number matching the intercepted calls used against him at trial, that he was not the individual known as "Catcheton," and that he was not a member of the conspiracy charged in the indictment. Counsel also notes that the testimony of Government witnesses revealed that Defendant was conspicuously absent during significant times of the conspiracy.

With respect to the interpreter, counsel noted that Ms. Sadler was a capable, dependable and trustworthy interpreter who has served the courts of the Northern District of Florida as well as state courts in Northern Florida (doc. 364 at 18). Defense counsel does not mention his client raising any concerns about being able to understand Ms. Sadler. Defendant's suggestion in the reply brief that the Spanish spoken by an individual from the Caribbean would be virtually incomprehensible to a Mexican Spanish-speaker is not credible, given the complete lack of any contemporaneous complaint to that effect. And, to the extent Torres claims that Ms. Sadler's interpretation of counsel's remarks resulted in his not understanding the Government's plea offer, as amplified below, nothing before the court supports the existence of any "plea offer" for the translator to convey.

Defendant has offered only conclusory assertions in support of his claim and as such he has not shown that counsel's performance was constitutionally ineffective with respect to his pre-trial investigation and actions. No basis for relief on this ground appears.

Ground Two

Defendant next contends that counsel was constitutionally ineffective because he failed to put on witnesses and to conduct a vigorous cross-examination of the Government witnesses. Despite the seriousness of such a claim, Defendant fails to identify in his motion any witnesses whom he believes counsel should have called whose testimony could have altered the outcome of this case. Similarly, he does not identify the alleged deficiencies in counsel's cross-examination of the unspecified Government witnesses.[4]

In his reply, Defendant belatedly offers the names of two witnesses he claims to have asked counsel to call. As a general rule, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Cuthbert v. United States*, 296 F. App'x 904, 906 (11th Cir. 2008) *(quoting Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc )). Although counsel denies in his affidavit that Mr. Torres mentioned any useful witnesses, the undersigned, solely to avoid any suggestion of a meaningful factual conflict, will consider the witnesses Defendant now says he presented to defense counsel. The first claimed witness is Manuel Pineda, a contractor and owner of the Mexican restaurant where Defendant was arrested. Defendant claims that Pineda could have testified that he did not recognize the voice on the recorded conversation to be that of Defendant. Although Defendant represents that this would have been Pineda's testimony, he has not provided an affidavit or statement from

---

[4]Defendant's assertion that counsel failed to ask Defendant about his "side of the story" was adequately addressed in the previous ground for relief and warrants no further discussion.

Pineda evincing a willingness to testify or that Pineda would testify as Defendant would like.

Defendant also maintains that he told his attorney to interview and call as a witness co-defendant Martin Ramirez, who allegedly would have testified that Defendant was not involved in the conspiracy or any of the individual transactions. Again, Defendant has not made any showing that Ramirez would have been willing to testify as he represents. The record, on the other hand, suggests that Ramirez could not have provided such exculpatory testimony. The facts as set forth in Ramirez's PSR indicate that Ramirez had direct dealings with Defendant during the course of the conspiracy, and thus any exculpatory testimony would have been in direct conflict with these facts (doc. 212 at ¶¶ 76, 79). Because Ramirez had already pleaded guilty and was awaiting sentencing at the time of Defendant's trial (*see* docs. 152–154; 157), it is improbable that Ramirez would have been willing to risk increasing his own sentencing exposure to offer the purportedly exculpatory testimony. Defendant offers no credible showing, or even such facts as would support an inference, that testimony from Ramirez, even assuming Ramirez would agree to testify, would have made a difference in the trial.

Defendant has not shown that counsel's performance was constitutionally insufficient, and he is not entitled to relief on his second claim.

Ground Three

Defendant contends that counsel was ineffective at sentencing in that he "abandoned] the Defendant at the PSI" and he never met with Defendant to review the PSR or determine if Defendant had any objections.

The first portion of Defendant's claim appears to be that counsel did not object to the PSR. This claim, to put it kindly, butts up against the reality of the actual record. As noted above, counsel made objections in Defendant's behalf prior to sentencing, as a result of which the PSR was revised, resulting in a two level decrease in Defendant's offense level.

At sentencing, counsel continued to advocate on Mr. Torres' behalf. Having already gained a reduction in Defendant's offense level as a result of the pre-sentencing objections, defense counsel held fast in his argument that his client should be held accountable for a lesser drug weight (doc. 304 at 4). Counsel conceded that the defense could not "in good faith" argue that Defendant was entitled to a minor or minimal role adjustment, but urged that, considering the duration and scope of the conspiracy, Defendant should receive a low-end guidelines sentence due to his lesser culpability (*id*. at 5–6). Finally counsel asked the court to consider Defendant's limited education, impoverished background and knee injury in imposing sentence (*id*. at 7).

In his affidavit, defense counsel does not specifically rebut Defendant's assertion that counsel never met with him to discuss the PSR or asked whether Defendant had objections, stating only that the "record at sentencing speaks for itself" (doc. 364 at 19). The record reflects that when asked at sentencing whether he had sufficient time to review the PSR with his client, counsel answered in the affirmative (doc. 304 at 4). The court did not inquire directly of Defendant, but, contrary to Defendant's suggestion, Federal Rule of Criminal Procedure 32(i)(1)(A) does not expressly require that a separate inquiry be made of both counsel and the defendant. Pursuant to this rule, the sentencing court is only tasked with verifying that the

defendant and the defendant's attorney have read and discussed the PSR. In any event, Defendant has not identified any viable objections to the PSR that would have changed the outcome of sentencing. Any further argument for a minimal or minor role adjustment would have been fruitless, because, despite counsel's arguments regarding Defendant's relative culpability, the court's sentence fell in the middle of the advisory guidelines range.

Defendant has not shown either deficient performance or prejudice with respect to counsel's handling of the PSR, and he is not entitled to relief.

As part of the third claim for relief, Defendant also argues that counsel failed to advise of the Government's plea offer and of the strength of the Government's case. The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected." *In re Perez*, 682 F.3d 930, 932 (11th Cir.2012) (citing *Missouri v. Frye*, ––– U.S. ––––, 132 S.Ct. 1399 (2012); *Lafler v. Cooper*, –––U.S. ––––, 132 S.Ct. 1376 (2012)). A defendant who raises a claim of ineffective assistance of counsel with respect to a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgement and sentence that were imposed. *Lafler*, 132 S.Ct. at 1385. All defense counsel of this bar, as well as the undersigned, fully know that the United States Attorney's office in this District does not engage in "plea negotiations" per se, and as such Defendant, who was charged in a single count of the indictment, would not have received any offer other than a "straight up" guilty plea. Mr. Torres has never identified the substance of the purported plea offer, nor has he stated that he would have been

willing to enter a plea. As such Defendant has not met his burden, and he is not entitled to relief.[5]

Ground Four

Leaving no stone unturned, Mr. Torres contends that counsel was constitutionally ineffective on appeal. According to Defendant, counsel ignored stronger issues and pursued issues that were frivolous. Consistent with his custom on the previous three grounds, Defendant has not identified the issues that he maintains counsel should have pursued. Even if he had done so, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 126–127 (2009); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991). One may bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. *Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at

---

[5]The court also notes that entering a guilty plea would have required Defendant to admit his guilt of the charges. This is contrary to what appears to have been Defendant's consistent position, expressed even as recently as in his reply to the Government's response to his § 2255 motion, that he was "not involved in the conspiracy" (doc. 372 at 2).

Case Nos.: 5:10cr39/RS/CJK; 5:12cv217/RS/CJK

most on a few key issues." *Barnes,* 463 U.S. at 751–52. In fact, this is the "hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective. *Id.*; *Heath*, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); *Reutter v. Secretary for Dept. of Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (citing *Heath*). Defendant has not shown that appellate counsel's performance was constitutionally deficient.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Accordingly, Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The amended motion to vacate, set aside, or correct sentence (doc. 356) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28th day of October, 2014.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**

Case Nos.: 5:10cr39/RS/CJK; 5:12cv217/RS/CJK